FILED
IN CLERK'S OFFICE
US DISTRICT COURT E D N Y.

★ NOV 16 2016 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X

BETSEY NIEVES and XARIEL CAMBRELEN,

                             Plaintiffs,

                    - against -

MICHAEL FAHMY, POLICE OFFICER
JOHN DOE 1-15, and THE CITY OF NEW
YORK,

                            Defendants.
------------------------------------------------------------- X

**MEMORANDUM and ORDER**

15 Civ. 7297 (AMD) (ST)

ANN DONNELLY, District Judge.

The plaintiffs filed this Section 1983 action, in connection with their November 15, 2013 arrest and subsequent imprisonment for drug-related offenses, against the City of New York, Detective Michael Fahmy, and unnamed police officers. The plaintiffs assert claims of false arrest, false imprisonment, malicious prosecution, abuse of process, deprivation of the right to a fair trial, failure to intervene, and supervisory liability against the individual police officers, and assert that the City is subject to municipal liability. The plaintiffs also allege deprivations of rights secured by Section 1981. The defendants move to dismiss the complaint in its entirety. The plaintiffs oppose; in their memorandum, they allege new information about their encounter with the defendants. For the reasons set out below, the defendants' motion is granted in part. By December 5, 2016, the plaintiffs are to show cause why the following claims should not be dismissed: deprivation of the right to a fair trial, failure to intervene, supervisory liability, and claims for violations of Section 1981.

1

## BACKGROUND

The facts alleged in the complaint, which are assumed to be true, as they must be, are not substantial. On November 15, 2013, the plaintiffs were "at or near" 132 Harrison Avenue in Richmond County (Staten Island); they claim that they were "committing no crime," were "not acting in a suspicious manner," and were not "in possession of any contraband or controlled substances." (Compl. ¶¶ 12–15.) According to the plaintiffs, they were "unlawfully and without just cause, approached, accosted, falsely arrested and falsely imprisoned" by the defendants. (Compl. ¶ 16.)

The plaintiffs contend that arresting officer, Detective Michael Fahmy, "with the acquiescence of other defendants, misrepresented facts in the police reports and other documents." (Compl. ¶ 19.) Specifically, the plaintiffs say that "false information and evidence, including the possession of marajuhana was used against the plaintiff[s] and formed the basis of the criminal charges against them." (Compl. ¶ 20.) After the arrest, the plaintiffs were held for "approximately 24 hours" before they were released. (Compl. ¶¶ 17–18.) The plaintiffs were charged with criminal possession of a controlled substance in the seventh degree, a misdemeanor, (New York State Penal Law 220.03), and unlawful possession of marijuana, a violation. (New York State Penal Law 221.05.) The plaintiffs complain that they were "compelled to make numerous court appearances" between the date of their arrest and April 21, 2015, when the criminal court judge dismissed the charges. (Compl. ¶¶ 17–18.) The plaintiffs claim that officers were trying to "avoid discipline for . . . abuse of authority, to obtain overtime compensation and to obtain credit for an arrest." (Compl. ¶ 21.)

The plaintiffs go on to argue that their allegedly unlawful arrest and detention was a "direct and foreseeable result of the unconstitutional policies, customs and practices of the City

of New York and the NYPD." (Compl. ¶ 22.) The plaintiffs also allege that "supervisory defendants personally caused" the plaintiffs' "constitutional injury by being deliberately and/or consciously indifferent to the rights of citizens in failing to properly train, select, supervise and discipline their employees." (Compl. ¶¶ 57, 107.)

In an effort to establish municipal liability, the plaintiffs assert, without specificity, that the "incidents that are the subject of their complaint are part of a pattern of false arrests and civil rights violations against persons of color, as well as others, by members of the New York City Police Department in Richmond County." (Compl. ¶ 1.) The plaintiffs maintain that the procedures and customs include "subjecting citizens to excessive force, arresting people without probable cause and engaging in a practice of falsification to conceal their abuse of authority." (Compl. ¶ 61.) Citing no facts, the plaintiffs theorize that the so-called pattern includes "lying under oath, known in the NYPD as 'testilying', the planting of, and or perjurious [sic] statements with regard to controlled substances, known in the NYPD as 'flaking' and the making of false arrests to obtain overtime compensation, known in the NYPD as 'collars for dollars.'" (Compl. ¶ 61.)

The plaintiffs further claim that violations are "not isolated incidents," and assert that City and NYPD leadership should be "aware" that officers "are engaging in a pattern of falsification to conceal their abuse of authority and for other unlawful motives." (Compl. ¶ 23.) In support of this contention, the plaintiffs cite lawsuits, notices of claim, and complaints filed with the NYPD's Internal Affairs Bureau and the City of New York's Civilian Complaint Review Board. (Compl. ¶ 23.) They also assert that many officers of the NYPD "are not sufficiently trained regarding the law of arrest, [and] the definition of probable cause." (Compl. ¶ 23.)

The plaintiffs filed this action on June 22, 2015 in the Southern District of New York. The Honorable John G. Koetl transferred this action to the Eastern District in December of 2015. On May 23, 2016, the defendants moved to dismiss the complaint pursuant to Rule 12(b)(6). In their opposition, the plaintiffs include new factual allegations that were not in their complaint.[1] The plaintiffs' lawyer also attacks the City's motives in making its motion to dismiss.[2] For the reasons that follow, the defendants' motion is granted in part.

## DISCUSSION

Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has clarified that while Rule 8 does not require "detailed factual allegations," it demands more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A pleading that provides mere "labels and conclusions" or "a formulaic recitations of the elements of a cause of action" is insufficient. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

When considering a Rule 12(b)(6) motion to dismiss, the court must accept the factual allegations in the complaint as true, *Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012), and is confined to the "the allegations contained within the four corners of [the] complaint." *Fiore v. Rivera*, No. 14-cv-3570-JS-GRB, 2015 WL 5007938, at *2 (E.D.N.Y. Aug. 20, 2015) (quoting *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 71 (2d Cir. 1998)). However, while the court must accept all factual allegations as true, the same rule does not apply

---

[1] The plaintiffs allege that they were inside their own home, asleep, at about 6:00 a.m., when Detective Fahmy and unnamed police officers, "broke down the door of the plaintiff's home and came inside with guns drawn." (Pls.' Mem. at 1 (ECF No. 31).) Then, according to the plaintiffs, the defendants ordered them to lie down, and threatened to shoot them if they did not comply. (Pls.' Mem. at 1 (ECF No. 31).)

[2] As evidenced by my determination granting in part the defendants' motion to dismiss, the plaintiff's accusation that the City made its motion merely to "waste time" is unwarranted.

to legal conclusions. *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Only complaints that state a "plausible claim for relief" may survive a motion to dismiss. *Id.* at 679. Deciding whether a complaint does so "requires the reviewing court to draw on its judicial experience and common sense." *Id.*

"Section 1983 provides a civil claim for damages against any person who, acting under color of state law, deprives another of a right, privilege or immunity secured by the Constitution or the laws of the United States." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999). Section 1983 does not itself create any substantive rights; it merely provides for a procedure for redressing the deprivation of rights established by the Constitution or the laws of the United States. *Forney v. Forney*, 96 F. Supp. 3d 7, 11 (E.D.N.Y. 2015) (citations omitted).

The plaintiffs bring claims against the individual officers for false arrest, false imprisonment, malicious prosecution, abuse of process, deprivation of the right to a fair trial, failure to intervene, supervisory liability, and violations of Section 1981. They also allege that the City of New York "engaged in conduct that constituted a procedure, custom, usage, practice, rule and/or regulation, which violated the Constitution of the United States." (Compl. ¶ 60.)

### A. Claims Against Detective Michael Fahmy

In order to state a claim under Section 1983 against an individual defendant, the plaintiffs must allege the personal involvement of the defendant in the alleged constitutional deprivation. *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010)). A Section 1983 pleading that does not allege the personal involvement of an individual defendant "fails as a matter of law and should be dismissed." *Taylor v. Sposato*, No. 15-cv-3656-JS-SIL, 2015 WL 5599178, at *2 (E.D.N.Y. Sept. 22, 2015) (citing *Johnson v. Barney*, 360 F. App'x 199, 201 (2d Cir. 2010)).

5

### i. *False Arrest*[3]

The plaintiffs complain that they "were unlawfully and without just cause, approached, accosted, falsely arrested, and falsely imprisoned." To evaluate a Section 1983 claim for false arrest, federal courts look to the law of the state in which the plaintiffs allege they were arrested. *Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004). Under New York law, the plaintiffs must establish that "the defendant intentionally confined" them without "consent and without justification." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). Probable cause to arrest is an "absolute defense to a false arrest claim." *Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013) (citations omitted).

While the plaintiffs' complaint is certainly long, it says almost nothing about what actually happened to them. Instead, it makes the "naked assertion," that they were unlawfully arrested, and that Detective Fahmy "misrepresented" the facts that were the basis of the criminal charges against them. *See Iqbal*, 556 U.S. at 678. There are no details about the allegedly unlawful arrest—including whether Detective Fahmy was personally involved—in the complaint. *See Mayzick v. Cty. of Nassau*, 32 F. Supp. 3d 399, 402 (E.D.N.Y. 2014) (dismissing complaint because the "few allegations to be found in the Complaint are short, conclusory, and almost entirely devoid of appreciable factual content."). Thus, the complaint fails to allege enough "factual content" to allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). Accordingly, the false arrest claims are dismissed.

---

[3] The plaintiffs also allege that the defendants subjected them to false imprisonment. "Under New York law, false arrest is considered to be a species of false imprisonment, and the two claims have identical elements." *Mejia v. City of N.Y.*, 119 F. Supp. 2d 232, 252 (E.D.N.Y. 2000) (citing *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995)).

### ii. Malicious Prosecution

To prevail on a malicious prosecution claim under Section 1983, the plaintiffs must establish the following: "(1) that the defendant commenced or continued a criminal proceeding against him; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice." *Droz v. McCadden*, 580 F.3d 106, 109 (2d Cir. 2009), *as amended* (Oct. 7, 2009) (citation omitted). The absence of probable cause "generally creates an inference of malice." *Manganiello v. City of N.Y.*, 612 F.3d 149, 163 (2d Cir. 2010) (citation omitted). The plaintiffs may demonstrate malice by establishing that the prosecution was undertaken for "improper or wrongful motives" or that it was in reckless disregard of the plaintiffs' rights. *Id.* (citation omitted).

Here, again, the plaintiffs do not provide any meaningful factual content to support their malicious prosecution claim. Instead, they make the vague and conclusory claims that "false information and evidence, including the possession of marajuhana" was used to form the basis of "false charges . . . brought against the plaintiff," that they were "compelled to make numerous court appearances," and that the criminal charges were ultimately dismissed. Because the plaintiffs failed to plead facts that create a reasonable inference that the defendants are liable for the misconduct alleged, *see Iqbal* 556 U.S. at 678, the malicious prosecution claims are dismissed.

### iii. Malicious Abuse of Process[4]

To state a claim for malicious abuse of process, the plaintiffs must allege that the defendants "(1) employ[ed] regularly issued legal process to compel performance or forbearance of some act, (2) with the intent to do harm without excuse o[r] justification, and (3) in order to

---

[4] The defendants' motion to dismiss addressed neither the claims of malicious abuse of process nor the claims of deprivation of the right to a fair trial.

7

obtain a collateral objective that is outside the legitimate ends of the process." *Arrington v. City of N.Y.*, 628 F. App'x 46, 49 (2d Cir. 2015) (quoting *Savino v. City of N.Y.*, 331 F.3d 63, 76 (2d Cir. 2003)). In order to allege an adequate collateral objective, the plaintiffs must allege that the defendants "aimed to achieve a collateral purpose beyond or in addition to . . . criminal prosecution." *Arrington v*, 628 F. App'x at 49. In this case, the plaintiffs allege that the defendants sought to obtain overtime compensation and "credit for an arrest." This assertion is a "mere allegation of a . . . motive, not a collateral objective." *Id.* at 49–50. Thus, by December 5, 2016, the plaintiffs are to show cause their claims for malicious abuse of process should not be dismissed with prejudice.

### iv. Deprivation of Right to a Fair Trial

Section 1983 claims for denial of the right to a fair trial cannot succeed if there was no trial. *Walker v. City of N.Y.*, No. 14-cv-808-ER, 2015 WL 4254026, at *5 (S.D.N.Y. July 14, 2015). According to the complaint, all criminal charges against the plaintiffs were dismissed prior to trial. In light of this fact, by December 5, 2016, the plaintiffs are to show cause why their claims for deprivation of a right to a fair trial should not be dismissed with prejudice.

## B. Claims Against the "John Doe" Defendants

In opposition to the defendants' motion to dismiss, the plaintiffs maintain that, because the "John Doe police officers are not the subject of the motion to dismiss," they will "therefore survive this motion." (Pls.' Mem. at 6 (ECF No. 35).) A district court has the power to *sua sponte* dismiss claims as long as the plaintiffs have been given an opportunity to be heard. *Whitfield v. O'Connell*, No. 09-cv-1925-WHP, 2010 WL 1010060, at *7 n.4 (S.D.N.Y. Mar. 18, 2010), *aff'd*, 402 F. App'x 563 (2d Cir. 2010); *see also Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) ("Though the district court has the power to dismiss a complaint sua sponte for failure

8

to state a claim on which relief can be granted, it may not properly do so without giving the plaintiff an opportunity to be heard.") Here, as explained above, the plaintiffs had a fair opportunity to be heard on whether their complaint included enough factual content to survive a Rule 12(b)(6) motion to dismiss—an issue even more pronounced for claims against the unnamed defendants. For this reason, the plaintiffs' claims against the John Doe defendants are dismissed.

### i. Failure to Intervene

The plaintiffs contend that the individual defendants failed to intervene on behalf the plaintiffs when their constitutional rights were being violated. However, the complaint does not specify which of the alleged constitutional violations forms the basis for the failure to intervene claim. *See Forney*, 96 F. Supp. 3d at 13 ("there can be no failure to intervene claim without a primary constitutional violation."). Because the complaint includes no details regarding the plaintiffs' claim that the John Doe defendants failed to intervene, those claims are dismissed.

### ii. Supervisory Liability

The plaintiffs allege that "supervisory defendants personally caused" the plaintiffs' "constitutional injury by being deliberately and/or consciously indifferent to the rights of citizens in failing to properly train, select, supervise and discipline their employees." As discussed above, the plaintiffs must allege the personal involvement of the defendants in alleged constitutional deprivations in order to prevail on a claim under Section 1983. *Taylor*, 2015 WL 5599178, at *2. Moreover, "supervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on *respondeat superior*." *Carrillos v. Inc. Vill. of Hempstead*, 87 F. Supp. 3d 357, 382 (E.D.N.Y. 2015) (quoting *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003)). To the extent that the plaintiffs allege that the John Doe defendants are

subject to supervisory liability, the plaintiffs have failed to adequately plead the personal involvement of the defendants in any alleged constitutional deprivation.

### C. Municipal Liability Pursuant to Section 1983 ("*Monell* Claim")

It is well-established that where the plaintiffs fail to state a claim for an underlying constitutional violation, the claim for municipal liability necessarily fails. *Deraffele v. City of New Rochelle*, No. 15-cv-282-KMK, 2016 WL 1274590, at *17 (S.D.N.Y. Mar. 30, 2016) (collecting cases). However, even if the claims for false arrest and malicious prosecution had survived, the plaintiffs have not plausible alleged a claim against the City.

A city cannot be held liable under Section 1983 on a theory of supervisory liability. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 692 (1978). A plaintiff may only prevail in a Section 1983 suit against a municipality of the acts alleged to be unconstitutional were the result of an official policy or custom. *Id.* at 690–91. Courts in this Circuit apply a two part test to Section 1983 claims brought against a municipality. *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985). First, a plaintiff must establish the existence of a municipal policy or custom "to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer." *Id.* Second, a plaintiff must demonstrate a "direct causal link between [the] municipal policy or custom and the alleged constitutional deprivation." *Moran v. Cty. of Suffolk*, No. 11-cv-3704-PKC-GRB, 2015 WL 1321685, at *9 (E.D.N.Y. Mar. 24, 2015) (citations omitted); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989). In other words, "for a plaintiff to prove municipal liability under § 1983, '[a]t the very least there must be an affirmative link between the policy and the particular constitutional violation alleged.'" *Houston v. Cotter*, No. 07-cv-3256-JFB-AYS, 2016 WL 1253391, at *9 (E.D.N.Y. Mar. 30, 2016) (quoting *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985)).

To satisfy the first part of the test on a motion to dismiss, the plaintiffs must allege:

(1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom through which constructive notice is imposed upon policymakers; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised "deliberate indifference" to the rights of the plaintiff.

*Moran*, 2015 WL 1321685, at *9 (collecting cases). The plaintiffs do not allege that the City implemented a formally recognized policy, nor do they plead that a municipal policymaker made some specific decision or took some action that caused the plaintiffs' injury. Instead, the plaintiffs seem to assert municipal liability on the bases that there was a widespread custom, and that police officers were inadequately trained and supervised.

The plaintiffs make the boilerplate allegations that the NYPD's procedures and customs included "subjecting citizens to excessive force, arresting people without probable cause and engaging in a practice of falsification to conceal their abuse of authority."[5] The complaint states that these practices include "testilying" (which the complaint defines as "perjury and or lying under oath"), "flaking" (which the plaintiffs define as the "planting of, and or perjurious statements [sic] with regard to controlled substsances"), and "collars for dollars" (defined in the complaint as "making of false arrests to obtain overtime compensation").

When plaintiffs claim municipal liability, "allegations which are nothing more than broad, simple and conclusory statements are insufficient." *Patterson v. City of N.Y.*, No. 14-cv-5330-PKC, 2015 WL 8362702, at *7 (S.D.N.Y. Dec. 8, 2015); *see also Rasmussen v. City of N.Y.*, 766 F. Supp. 2d 399, 408 (E.D.N.Y. 2011) (when the plaintiff defines the alleged custom as the city "purposely ignor[ing] violations of individuals' constitutional rights," he assumes "an almost

---

[5] These allegations are identical to those made by the plaintiffs in *Patterson v. City of N.Y.*, No. 14-cv-5330-PKC, 2015 WL 8362702 (S.D.N.Y. Dec. 8, 2015); the plaintiffs' counsel in this case also represented the *Patterson* plaintiffs.

impossible burden"). Here, the plaintiffs' allegations regarding a municipal custom or practice concerning false arrest and malicious prosecution are not supported by factual allegations. *Iqbal*, 556 U.S. at 679; *see also Cuevas v. City of N.Y.*, No. 07-cv-4169-LAP, 2009 WL 4773033, at *4 (S.D.N.Y. Dec. 7, 2009) (dismissing claims against the City of New York because the plaintiff did not allege any facts to satisfy the pleading requirements described in *Iqbal*). Instead, the plaintiffs catalogue unrelated civil and criminal cases—none of which are relevant to the defendants' alleged misconduct in this case. This is not enough to state a claim for municipal liability. *See Patterson*, 2015 WL 8362702, at *7 ("unproved allegations set forth in a litany of unrelated civil actions, as well as certain criminal cases with subject matter unrelated to the defendants' alleged . . . do not support a claimed municipal policy"); *see also Rasmussen*, 766 F. Supp. 2d at 410 ("no assumption of culpability can be drawn from the mere fact that unsubstantiated complaints against a police officer are made.").

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). A municipality's failure to train may constitute an official policy for purposes of *Monell* liability if the failure amounts to "deliberate indifference" to the rights of the individuals with whom the municipal employees interacts. *Wray v. City of N.Y.*, 490 F.3d 189, 195 (2d Cir. 2007). Where, as here, the city has a training program, the plaintiffs must "identify a specific deficiency in the city's training program and establish that that deficiency is 'closely related to the ultimate injury,' such that it 'actually caused' the constitutional deprivation." *Wray*, 490 F.3d at 196. In this case, the plaintiffs allege no facts that support their claim that the City failed to train its police officers.

Because the complaint does not plausibly allege municipal liability, the defendants'

motion to dismiss the claims against the City is granted.

**D. Section 1981[6]**

In addition to the claims pursuant to Section 1983, the plaintiffs appear to allege generally "Deprivation of Rights under 42 U.S.C. Section 1981." Section 1981 "prohibits discrimination that infects the legal process in ways that prevent one from enforcing contract rights, by reason of his or her race, [and it] covers . . . efforts to impede access to the courts or obstruct nonjudicial methods of adjudicating disputes." *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993) (citations omitted). To state a claim under Section 1981, the plaintiffs must allege that they are members of a racial minority, that the defendants intended to discriminate against them on the basis of their race, and that the discrimination concerned one or more of the activities set out in the statute—namely to make and enforce contracts, sue and be sued, and give evidence. *Id.*

In this case, the plaintiffs complain that the "incidents that are the subject of their complaint are part of a pattern of false arrests and civil rights violations against persons of color, as well as others, by members of the New York City Police Department in Richmond County." This threadbare allegation is insufficient to demonstrate racially discriminatory intent under Section 1981. *See Obilo v. City Univ. of City of N.Y.*, No. 01-cv-5118-DGT, 2003 WL 1809471, at *11 (E.D.N.Y. Apr. 7, 2003) ("bald allegations" that the defendants "turned a deaf ear on the repeated pleas [of innocence] of the plaintiff, solely because the complainant was a white female and because the plaintiff . . . was Black" were insufficient to establish racially discriminatory intent). Moreover, the plaintiffs fail to establish that the defendants prevented them from pursuing judicial enforcement of any rights, "contractual or otherwise." *Id.* Accordingly, by

---

[6] The defendants do not address the plaintiffs' Section 1981 claims in their motion to dismiss.

December 5, 2016, the plaintiffs are to show cause why their Section 1981 claim should not be dismissed for failure to state a claim.

### E. The Plaintiffs' Opposition Raises New Facts

The plaintiffs' memorandum opposing the motion to dismiss alleges facts that are not included in their complaint. The plaintiffs cannot amend their complaint by alleging new facts in their motion papers. *Heletsi v. Lufthansa German Airlines, Inc.*, No. 99-cv-4793-SJ, 2001 WL 1646518, at *1 n.1 (E.D.N.Y. Dec. 18, 2001); *Southwick Clothing LLC v. GFT (USA) Corp.*, No. 99-cv-10452-GBD, 2004 WL 2914093, at *6 (S.D.N.Y. Dec. 15, 2004) ("A complaint cannot be amended merely by raising new facts and theories in plaintiffs' opposition papers, and hence such new allegations and claims should not be considered in resolving the motion."). To the extent that the plaintiffs seek to have the Court consider the newly alleged facts, the plaintiffs are to file a motion to amend their complaint pursuant to Rule 15.

## CONCLUSION

For the reasons set out above, the defendants' motion to dismiss the claims for false arrest, malicious prosecution, and municipal liability is granted. By December 5, 2016, the plaintiffs are to show cause why the following claims should not be dismissed: deprivation of the right to a fair trial, failure to intervene, supervisory liability, and claims for violations of Section 1981.

**SO ORDERED.**

s/Ann M. Donnelly
Ann M. Donnelly
United States District Judge

Dated: Brooklyn, New York
November 16, 2016